# No. 23-1138

## IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

---

MANN CONSTRUCTION, INC., BROOK WOOD, KIMBERLY WOOD, LEE COUGHLIN, AND DEBBIE COUGHLIN,

Plaintiffs-Appellees

v.

UNITED STATES OF AMERICA,

Defendant-Appellant

---

## ON APPEAL FROM THE ORDER OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

---

## OPENING BRIEF FOR THE APPELLANT

---

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

FRANCESCA UGOLINI                (202) 514-3361
ELLEN PAGE DELSOLE               (202) 514-8128
GEOFFREY J. KLIMAS               (202) 307-6346
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel:*
DAWN N. ISON
  *United States Attorney*

15256052.1

# TABLE OF CONTENTS

**Page**

Table of contents.................................................................i
Table of authorities ......................................................... iii
Statement regarding oral argument....................................ix
Glossary .............................................................................x
Jurisdictional statement ....................................................1

    A.    District Court jurisdiction ....................................1

    B.    Appellate jurisdiction..........................................2

Statement of the issues .....................................................2
Statement of the case ........................................................3

    A.    Taxpayers bring suit for a refund of penalties assessed by the IRS, and this Court concludes those penalties were improper ........................................3

    B.    On remand, the Government refunds the penalties, but the District Court enters a nationwide vacatur ....................7

Summary of argument .......................................................9
Standard of review ..........................................................12
Argument ........................................................................12

I    The District Court erred in vacating Notice 2007-83 in a tax refund suit not brought under the APA ........................12

    A.    A refund was the only remedy properly available to taxpayers in this refund suit .................................13

    B.    Neither this Court's prior opinion nor the APA required vacatur in a refund suit .........................................20

II    Even if APA remedies applied, the District Court's vacatur order was erroneous ........................................26

**Page**

A.   The APA does not independently authorize universal vacatur of agency rules ...........................................26

B.   Even if the APA authorized universal vacatur, that remedy would be a discretionary one subject to equitable balancing ................................................39

Conclusion....................................................................47
Certificate of compliance .........................................48
Record addendum ......................................................49
Statutory addendum...................................................50

# TABLE OF AUTHORITIES

**Cases:**                                                                  **Page(s)**

*Air New Zealand Ltd. v. Civil Aeronautics Bd.*,
  726 F.2d 832 (D.C. Cir. 1984) (Scalia, J.) ..................................... 29
*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
  988 F.2d 146 (D.C. Cir. 1993) .......................................... 43
*American Sch. of Magnetic Healing v. McAnnulty*,
  187 U.S. 94 (1902) ........................................................ 28
*Anchor v. O'Toole*,
  94 F.3d 1014 (6th Cir. 1997) ......................................... 12
*Arizona v. Biden ("Arizona I")*,
  31 F.4th 469 (6th Cir. 2022) .................................... 25, 46
*Arizona v. Biden ("Arizona II")*,
  40 F.4th 375 (6th Cir. 2022) ................. 25, 27, 31, 33, 35, 41, 45
*Baeder v. Heckler*,
  768 F.2d 547 (3d Cir. 1987) ................................... 19, 23
*Biggs v. Quicken Loans, Inc.*,
  990 F. Supp. 2d 780 (E.D. Mich. 2014) ......................... 42
*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of
  Eng'rs*, 781 F.3d 1271 (11th Cir. 2015) ............................ 40-41, 43
*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) ...................................................... 16
*Cal. Cmtys. Against Toxics v. U.S. EPA*,
  688 F.3d 989 (9th Cir. 2012) (per curiam) ................................ 43
*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ................................................ 31, 41
*California v. Texas*,
  141 S. Ct. 2104 (2021) ................................................. 31
*Cent. & S.W. Servs., Inc. v. U.S. EPA*,
  220 F.3d 683 (5th Cir. 2000) ........................................ 43
*Cent. Me. Power Co. v. FERC*,
  252 F.3d 34 (1st Cir. 2001) .......................................... 43
*CIC Servs., LLC v. IRS*,
  141 S. Ct. 1582 (2021) ................................................ 14

**Cases (continued):**                                   **Page(s)**

*Cohen v. United States,*
  650 F.3d 717 (D.C. Cir. 2011) (en banc) ................................. 16

*Commonwealth v. Biden,*
  57 F.4th 545 (6th Cir. 2023) ................................................. 33

*Davis v. Fed. Election Comm'n,*
  554 U.S. 724 (2008) ............................................................. 32

*DHS v. New York,*
  140 S. Ct. 599 (2020) ........................................................ 33-36

*Drs. Hill & Thomas Co. v. United States,*
  392 F.2d 204 (6th Cir. 1968) ............................................... 17

*GBX Assocs. v. United States,*
  2022 WL 16923886 (N.D. Ohio Nov. 14, 2022) ...................... 42

*Gill v. Whitford,*
  138 S. Ct. 1916 (2018) ......................................................... 32

*Govig & Associates, Inc. v. United States,*
  2023 WL 2614910 (D. Ariz. Mar. 23, 2023) .......................... 35

*Haines v. Fed. Motor Carrier Safety Admin.,*
  814 F.3d 417 (6th Cir. 2016) ............................................... 40

*Hecht Co. v. Bowles,*
  321 U.S. 321 (1944) ................................................. 31, 41, 45

*Hewitt v. Commissioner,*
  21 F.4th 1336 (11th Cir. 2021) ............................................ 34

*High Cty. Conservation Advocates v. U.S. Forest Serv.,*
  951 F.3d 1217 (10th Cir. 2020) ........................................... 40

*Int'l Union, United Mine Workers of Am. v. Fed. Mine*
  *Safety and Health Admin.,*
  920 F.2d 960 (D.C. Cir. 1990) ............................................. 43

*Larson v. United States,*
  888 F.3d 578 (2d Cir. 2018) ................................................ 16

*Madsen v. Women's Health Ctr., Inc.,*
  512 U.S. 753 (1994) ............................................................. 31

*Mallinckrodt Chem. Works v. Missouri ex rel. Jones,*
  238 U.S. 41 (1915) ............................................................... 24

*Mann Construction, Inc. v. United States,*
  27 F.4th 1138 (6th Cir. 2022) ........................... 2, 6, 14-15, 17, 21

## Cases (continued):                                    Page(s)

*Massachusetts v. Mellon*,
  262 U.S. 447 (1923) ....................................................... 25
*Memphis Tr. Co. v. Board of Governors of Fed. Reserve*
  *Sys.*, 584 F.2d 921 (6th Cir. 1978) ................................. 16
*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*
  *Co.*, 463 U.S. 29 (1983) ............................................... 39
*Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans*
  *Affairs*, 260 F.3d 1365 (Fed. Cir. 2001) ......................... 43
*National Mining Association v. U.S. Army Corps of*
  *Engineers*, 145 F.3d 1399 (D.C. Cir. 1998) .................... 38
*Norton v. S. Utah Wilderness Alliance*,
  542 U.S. 55 (2004) ....................................................... 30
*Oakbrook Land Holdings, LLC v. Commissioner*,
  28 F.4th 700 (6th Cir. 2022) ......................................... 34
*Oom Inc., v. United States*,
  2023 WL 3058493 (D.N.J. Apr. 24, 2023) ...................... 34
*QinetiQ US Holdings, Inc. & Subs. v. Commissioner*,
  845 F.3d 555 (4th Cir. 2017) ......................................... 17
*The Real Truth About Abortion, Inc. v. FEC*,
  681 F.3d 544 (4th Cir. 2012) ......................................... 45
*Sierra Club v. U.S. EPA*,
  60 F.4th 1008 (6th Cir. 2023) .................................. 38-39, 43
*Skyworks, Ltd. v. Ctrs. for Disease Control & Prevention*,
  542 F. Supp. 3d 719 (N.D. Ohio 2021) ........................... 42
*Southern Glazer's Distribs. of Ohio, LLC v. Great Lakes*
  *Brewing Co.*, 860 F.3d 844 (6th Cir. 2017) ................... 12
*State of Nebraska Dep't of Health & Human Servs. v.*
  *Dep't of Health & Human Servs.* ................................ 18-19, 23, 40
*Estate of Streightoff v. Commissioner*,
  954 F.3d 713 (5th Cir. 2020) ......................................... 17
*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ................................................. 32
*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018) ................................................. 33
*United States v. Adesida*,
  129 F.3d 846 (6th Cir. 1997) ......................................... 15

## Cases (continued):                                            Page(s)

*United States v. Williams,*
   514 U.S. 527 (1995) ................................................................ 13
*Virginia Soc'y for Human Life, Inc. v. Fed. Election*
   *Comm'n,* 263 F.3d 379 (4th Cir. 2001) ........................................ 45
*Weinberger v. Romero-Barcelo,*
   456 U.S. 305 (1982) ........................................................ 42, 44
*Winter v. Natural Res. Def. Council,*
   555 U.S. 7 (2009) ................................................................ 42

## Statutes:

Act of Aug. 24, 1937, Chapter 754, § 3, 50 Stat. 751 ......................... 24

Administrative Procedure Act (5 U.S.C.):
   § 551 ...................................................................................... 6
   § 702 .................................................................................... 40
   § 702(1) .......................................................................... 11, 45
   § 703 ............................................................... 9, 16, 23, 28-30
   § 706 .................................................. 5, 22-24, 29, 30-31
   § 706(2) ........................... 10, 21, 23, 26-27, 30, 33, 45
   § 706(2)(A) ........................................................................ 38

Internal Revenue Code (26 U.S.C.):
   § 6511 .................................................................................... 2
   § 6532(a) ................................................................................ 4
   § 6707A .......................................................................... 1-2, 4
   § 6707A(a) ............................................................................ 3
   § 6707A(c)(1) ...................................................................... 3
   § 6707A(c)(2) ...................................................................... 3
   § 7422 .................................................................................... 2
   § 7422(a) ................................... 2, 4, 9-10, 13-14, 16, 28

28 U.S.C.:
   § 1291 .................................................................................... 2
   § 1346(a)(1) .............................. 2, 9-10, 13-14, 16, 28
   § 1391(e) ............................................................................ 38

**Statutes (continued):**                                                                 **Page(s)**

28 U.S.C. (cont'd):
§ 2342 ........................................................................... 28

42 U.S.C.:

§ 7607(b)(1) ............................................................... 39
§ 7607(d)(9) .............................................................. 39

**Rules:**

Fed. R. App. 4(a)(1)(B) ........................................................ 2

Fed. R. Civ. P. 23................................................................ 35

**Other Authorities:**

Administrative Procedure Act,
92 Cong. Rec. 2159 (1946) ........................................... 30

Administrative Procedure Act,
S. No. 79-248, 2d Sess. (1946)..................................... 30

Announcement 2022-28, Listed Transactions,
2022 WL 17491928 (Dec. 27, 2022) ........................ 7, 20

*Attorney General's Manual on the Administrative
Procedure Act* (1947)................................................29-30

*Final Report of the Attorney General's Committee on
Administrative Procedure* (1941) ................................ 28

H.R. Rep. No. 79-1980, 2d Sess. (1946)............................ 30

-viii-

**Other Authorities (continued):**                    **Page(s)**

Notice 2007-83, Abusive Trust Arrangements Utilizing
    Cash Value Life Insurance Policies Purportedly to
    Provide Welfare Benefits, 2007-2 C.B. 960, 2007 IRB
    LEXIS 920 (Oct. 17, 2007) .................................................... passim

Mila Sohoni, *The Power to Vacate a Rule*,
    88 Geo. Wash. L. Rev. 1121 (2020) ............................................... 20

John Harrison, *Section 706 of the Administrative*
    *Procedure Act Does Not Call for Universal*
    *Injunctions or Other Universal Remedies*,
    37 Yale J. on Reg. Bull. 37 (2020)..........................................24-25

S. Rep. No. 752, 79th Cong., 1st Sess. 27 (1945) .............................. 29

*Webster's New International Dictionary of the English*
    *Language* 2291 (2d ed. 1958) ....................................................... 22

-ix-

## STATEMENT REGARDING ORAL ARGUMENT

This appeal raises the question whether the District Court properly vacated an Internal Revenue Service rule nationwide in a suit seeking a refund of penalties paid to the agency. In light of the importance of this issue, counsel for the Government respectfully inform the Court that they believe oral argument would be beneficial.

-x-

# GLOSSARY

| Term | Definition |
|------|------------|
| APA | Administrative Procedure Act, 5 U.S.C. § 551, *et seq.* |
| IRS | Internal Revenue Service |
| Taxpayers | Mann Construction, Inc., Brook Wood, Kimberly Wood, Lee Coughlin, and Debbie Coughlin |
| The Notice | Notice 2007-83, Abusive Trust Arrangements Utilizing Cash Value Life Insurance Policies Purportedly to Provide Welfare Benefits, 2007-2 C.B. 960, 2007 IRB LEXIS 920 (Oct. 17, 2007) |

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

———————————

### No. 23-1138

## MANN CONSTRUCTION, INC., BROOK WOOD, KIMBERLY WOOD, LEE COUGHLIN, AND DEBBIE COUGHLIN,

**Plaintiffs-Appellees**

**v.**

## UNITED STATES OF AMERICA,

**Defendant-Appellant**

———————————

## ON APPEAL FROM THE ORDER
## OF THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

———————————

## OPENING BRIEF FOR THE APPELLANT

———————————

## JURISDICTIONAL STATEMENT

### A.    District Court jurisdiction

Mann Construction, Inc., Brook Wood, Kimberly Wood, Lee Coughlin, and Debbie Coughlin (collectively, "taxpayers") brought this suit in the District Court, seeking a refund of penalties that the Internal Revenue Service ("IRS") assessed pursuant to § 6707A of the Internal Revenue Code (26 U.S.C.) for failing to disclose their

participation in a listed transaction for the 2013 tax year.  (Complaint, RE 1, Page ID # 1-30.)  The District Court had subject matter jurisdiction over taxpayers' refund claim pursuant to 28 U.S.C. § 1346(a)(1) and 26 U.S.C. §§ 6511 and 7422.

### B.    Appellate jurisdiction

Taxpayers appealed the District Court's initial judgment in the Government's favor, and following remand from this Court's decision in *Mann Construction, Inc. v. United States*, 27 F.4th 1138 (6th Cir. 2022), the District Court on January 18, 2023, entered an opinion and order that vacated and set aside IRS Notice 2007-83 nationwide.  (Opinion, RE 73, Page ID # 1079-1085.)  That opinion and order was final, resolving all claims of all parties.  On February 14, 2023, the Government filed a timely notice of appeal.  Fed. R. App. 4(a)(1)(B) (60-day time limit); (Notice of Appeal, RE 76, Page ID # 1088-1089.)  This Court has jurisdiction under 28 U.S.C. § 1291.

### STATEMENT OF THE ISSUES

Taxpayers here brought claims seeking a refund of tax penalties they paid to the IRS pursuant to the statute that governs refund claims. 26 U.S.C. § 7422(a).  In a prior appeal in this case, this Court held that

the IRS notice that formed the basis for the penalties was improperly promulgated without notice and comment, and thus that the penalties were not properly imposed.  On remand to the District Court, the IRS refunded the penalties to taxpayers.

The question presented is whether the District Court erred in concluding that it was also required to vacate IRS Notice 2007-83 nationwide in this refund action.

## STATEMENT OF THE CASE

### A.  Taxpayers bring suit for a refund of penalties assessed by the IRS, and this Court concludes those penalties were improper

Taxpayers are generally required to report transactions that the Secretary of the Treasury has determined have "a potential for tax avoidance or evasion" or are "the same as, or substantially similar to, a transaction specifically identified by the Secretary as a tax avoidance transaction."  26 U.S.C. § 6707A(c)(1), (2).  Failure to report those transactions subjects taxpayers to penalties.  *Id.* § 6707A(a).

In 2007, the IRS issued Notice 2007-83, which identifies a particular type of transaction for which there is a potential for tax avoidance or evasion.  Notice 2007-83, Abusive Trust Arrangements

Utilizing Cash Value Life Insurance Policies Purportedly to Provide Welfare Benefits, 2007-2 C.B. 960, 2007 IRB LEXIS 920 (Oct. 17, 2007). The IRS subsequently determined that taxpayers here had failed to report certain transactions covered by Notice 2007-83 and imposed penalties under § 6707A for the years 2013 to 2017.  (Complaint, RE 1, Page ID # 2-3, 22.)

Taxpayers paid the penalties for 2013 and submitted an administrative refund claim.  *See* 26 U.S.C. § 7422(a).  The IRS did not act on that claim within six months, *see id.* § 6532(a), and taxpayers brought this suit, asserting four claims.  In each claim, taxpayers sought a refund of the 2013 penalties.  (Complaint, RE 1, Page ID # 25, 26, 28, 29.)  The complaint also referred to various forms of nonmonetary relief.  For example, the complaint described the suit as seeking to "enjoin the enforcement of the reporting requirement." (Complaint, RE 1, Page ID # 4.)  The complaint also included among its requests for relief "[a]n order and judgment setting aside Notice 2007-83," and a declaratory judgment "that Notice 2007-83 is unlawful" or is "inapplicable to" the particular transaction for which taxpayers were penalized.  (Complaint, RE 1, Page ID # 29.)  On the merits, each claim

asserted that Notice 2007-83 was invalid on various grounds under the Administrative Procedure Act.  (Complaint, RE 1, Page ID # 23-29).

The parties met and conferred before the Government filed a motion to dismiss.  In the meet and confer process, taxpayers' counsel expressly relinquished their claims for declaratory and injunctive relief, stating that the "Complaint was not intended to seek an injunction against the IRS or a declaratory judgment that would bind the IRS as to other taxpayers."  (Exhibit, RE 60, Page ID # 847.)  In its motion to dismiss, the Government therefore advised the District Court that "Plaintiffs concur in this motion to the extent that it moves to dismiss any claim for injunctive or declaratory relief."  (Motion to Dismiss, RE 15, Page ID # 72.)

The District Court accepted taxpayers' concession and dismissed their claims for injunctive and declaratory relief.  (Order, RE 22, Page ID # 243.)  As a result, the District Court observed in ruling on both the motion to dismiss and summary judgment motions that "the only claim for relief remaining" in the case sought "a judgment awarding damages in the amount of the [26 U.S.C. §] 6707A penalty assessed for [tax year]

2013." (Order, RE 22, Page ID # 243; *accord* Opinion, RE 45, Page ID # 604.)

The District Court subsequently entered judgment for the Government, concluding that Notice 2007-83 was valid in all respects. (Opinion, RE 45, Page ID # 605-16.)  Taxpayers appealed, and this Court reversed.  This Court observed that "taxpayers sued the federal government to recover the penalties," in keeping with the recognition that only a refund of the penalties was at issue.  *Mann Constr.*, 27 F.4th at 1142.  This Court held that Notice 2007-83 was a legislative rule, a type of rule that is generally required to be issued using notice-and-comment rulemaking, and that Congress had not exempted rules of this sort from the Administrative Procedure Act's ("APA") (5 U.S.C. § 551, *et seq.*) notice-and-comment rulemaking requirements.  *Id.* at 1142-48.

Based on its conclusion that the IRS was required, but failed, to use notice-and-comment rulemaking to issue Notice 2007-83, this Court stated that "we must set it aside."  *Mann Constr.*, 27 F.4th at 1148.  The Government did not seek further appellate review, and it has announced that it will not enforce penalties based on listed transactions identified without notice-and-comment rulemaking in cases where this

Court's decision is controlling precedent.  *See*, *e.g.*, Announcement 2022-28, Listed Transactions, 2022 WL 17491928 (Dec. 27, 2022) (specifically addressing Notice 2010-17).

## B.    On remand, the Government refunds the penalties, but the District Court enters a nationwide vacatur

On remand, the IRS refunded taxpayers the penalties for tax year 2013 and abated the penalties for other tax years.  (Notice, RE 67, Page ID # 873.)  Taxpayers thus received all the monetary relief they sought.  Taxpayers also, however, moved for an order "vacating" Notice 2007-83 and "setting it aside."  They urged the District Court to hold that "[t]he entire Notice is set aside everywhere and as to everyone."  (Motion, RE 53, Page ID # 757-767.)

The District Court granted taxpayers' motion over the Government's opposition and entered an order vacating and setting aside Notice 2007-83 nationwide.  The court acknowledged that, at the time it issued its opinion, the Government had already refunded the penalties at issue.  But it believed that this Court's prior opinion instructed it to "set aside" Notice 2007-83, that "setting aside" an agency action necessarily meant vacating that action, and that by definition "vacatur of an unlawful agency action is not limited to the

-8-

named plaintiffs." (Opinion, RE 73, Page ID # 1082, 1085.) The District Court rejected arguments that the taxpayers had received all relief appropriate to a refund action and believed that it was irrelevant that taxpayers had previously abandoned their claims for non-monetary relief, stating that "the APA *requires* reviewing courts to 'set aside' or to vacate any unlawful regulation" and that "[t]his vacatur requirement exists regardless of whether Plaintiffs seek it" and "even if Plaintiffs [have] forfeited" it. (Opinion, RE 73, Page ID # 1083.) The District Court also rejected suggestions that it should tailor its remedy, stating that "vacaturs are actions at law" over which a reviewing court has no discretion as to the appropriate scope. (Opinion, RE 73, Page ID # 1084.)

The District Court reiterated these points in denying the Government's motion for a stay pending appeal. The court acknowledged that taxpayers faced no harm from a stay of the vacatur, because even without that relief "no penalties can be assessed against Plaintiffs under IRS Notice 2007-83." (Stay Opinion, RE 81, Page ID # 1154.) But the District Court stated that its vacatur order "did exactly what the Sixth Circuit directed" the District Court to do because

this Court had already concluded "that IRS Notice 2007-83 must be set aside." (Stay Opinion, RE 81, Page ID # 1152.)  And the court repeated its view that the APA "*requires* district courts to set aside unlawful agency action." (Stay Opinion, RE 81, Page ID # 1152.)

## SUMMARY OF ARGUMENT

Taxpayers brought a tax refund suit under 26 U.S.C. § 7422(a) and 28 U.S.C. § 1346(a)(1) to recover penalties they paid to the IRS.  In a prior appeal, this Court held that taxpayers were entitled to a refund of the penalties.  On remand, the Government promptly paid taxpayers the amounts that they were owed.  Although that payment fully and completely redressed the injury of which taxpayers complained, they sought and obtained additional relief from the District Court in the form of nationwide vacatur of Notice 2007-83, on which the penalties were predicated.  The court's vacatur order was erroneous and should be reversed.

1.    As an initial matter, the express terms of the APA provide that it is not intended to duplicate or supersede preexisting "special statutory review proceeding[s]," even when a plaintiff alleges a violation of the APA's procedural requirements.  5 U.S.C. § 703.  Here, taxpayers

-10-

invoked the special statutory provisions governing tax refund suits,
28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422(a), under which the scope of
appropriate relief begins and ends with recovery of the amount at issue.

Although the District Court attempted to ground its award of
vacatur in this Court's prior opinion and the text of Section 706(2), both
of which use the phrase "set aside," neither supports such a remedy.  In
the prior appeal, taxpayers had abandoned their claims for
nonmonetary relief and maintained only that the imposition of
penalties was improper insofar as it depended on a procedurally
defective Notice.   This Court thus appeared to use the phrase "set
aside" merely to denote that it was disregarding the defective Notice in
determining whether taxpayers were entitled to a refund.  That
interpretation is consistent with the APA itself, where the instruction to
"set aside" agency action applies across all manner of suits, and aligns
with ordinary judicial review of legislation, in which a reviewing court
merely disregards the challenged act in rendering its decision.

2.    Making matters worse, the District Court held that, upon a
determination that Notice 2007-83 was procedurally defective, it was
required to impose nationwide vacatur.  This conclusion ignores the

text, structure, and history of the APA, as well as the context of this case as a refund suit challenging the imposition of penalties predicated on the Notice (rather than a freestanding APA suit asserting a facial challenge to the Notice). It also perpetuates the same problems implicated by universal relief in other contexts, such as nationwide injunctions. And it marks a substantial departure from ordinary principles of equity and Article III standing, which generally dictate that relief should operate with respect to specific parties.

At a minimum, the District Court erred in holding that, once a reviewing court has determined that an agency committed a procedural violation of the APA, universal vacatur is mandatory. The District Court's holding ignores the well-established body of law that has viewed vacatur as a species of equitable relief over which reviewing courts enjoy discretion, as well as the text of Section 702(1), which confirms that nothing in the APA displaces "the power or duty of the court … to deny relief on any … equitable ground." *See* 5 U.S.C. § 702(1).

The District Court's order vacating Notice 2007-83 nationwide is erroneous and should be reversed.

## STANDARD OF REVIEW

This Court reviews a district court's grant of equitable relief for abuse of discretion. *Anchor v. O'Toole*, 94 F.3d 1014, 1025 (6th Cir. 1997). "[A] district court necessarily abuses its discretion when it commits an error of law." *Southern Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 854 (6th Cir. 2017).

## ARGUMENT

## I

### The District Court erred in vacating Notice 2007-83 in a tax refund suit not brought under the APA

This is a refund suit that taxpayers brought seeking to recover penalties they paid to the IRS. In a previous appeal, this Court resolved the refund suit in taxpayers' favor, concluding that the IRS Notice upon which the penalties had been premised was procedurally invalid and thus reversing the District Court's judgment upholding the penalties. At this stage there is no dispute that taxpayers are entitled to a refund of the penalties, and they have already received their refunds. Moreover, as the District Court recognized, taxpayers face no prospect that the Notice will be enforced against them in the future.

And the IRS has already made clear that it will not enforce the Notice at issue in the future as to taxpayers within this Court's jurisdiction.

Despite all this, the District Court announced that it was vacating the Notice nationwide, doing so even though taxpayers had abandoned their claims for nonmonetary relief before the first appeal in this case. That extraordinary order was premised on a misunderstanding of this Court's prior decision and a misperception of basic principles of judicial review and administrative law.

## A.    A refund was the only remedy properly available to taxpayers in this refund suit

1.  Taxpayers sought a refund of penalties paid to the IRS. Congress has enacted a specialized statute governing such suits under which a taxpayer must first pay the penalty and then file a refund request with the IRS before bringing suit, 26 U.S.C. § 7422(a), as well as a specialized waiver of sovereign immunity that allows suit to be brought in district court "for the recovery of … [a] penalty claimed to have been collected without authority," 28 U.S.C. § 1346(a)(1); *see United States v. Williams*, 514 U.S. 527, 530-31 (1995).

To the extent that Notice 2007-83 imposed reporting requirements or similar duties on taxpayers, they could have sought to challenge

those requirements directly under the APA.  *See, e.g.*, *CIC Servs., LLC v. IRS*, 141 S. Ct. 1582, 1588-89 (2021).  At the outset of this litigation, it was not clear whether that was what taxpayers intended to do, as their complaint contained references to various forms of non-monetary relief in addition to seeking a refund.  But before the Government's motion to dismiss, taxpayers made clear that the "Complaint was not intended to seek an injunction against the IRS or a declaratory judgment that would bind the IRS as to other taxpayers."  (Exhibit, RE 60, Page ID # 847.)  The District Court accordingly recognized both at the motion to dismiss stage and at summary judgment that the only claims before it sought "a judgment awarding damages in the amount of the [26 U.S.C. §] 6707A penalty assessed for [tax year] 2013."  (Order, RE 22, Page ID # 243; *accord* Opinion, RE 45, Page ID # 604.)  This Court, too, recognized the dispute before it in the first appeal as one in which "taxpayers sued the federal government to recover the penalties." *Mann Constr.*, 27 F.4th at 1142 (citing 26 U.S.C. § 7422(a) and 28 U.S.C. § 1346(a)(1)).

In the prior appeal, this Court concluded that the penalties at issue were "collected without authority," 28 U.S.C. § 1346(a)(1), because

the notice on which they were premised—Notice 2007-83—should have been promulgated through notice-and-comment rulemaking but was not. *Mann Constr.*, 27 F.4th at 1142-48.  In accord with this Court's judgment, on remand, the Government refunded the penalties to taxpayers, granting taxpayers all the monetary relief they sought. (Notice, RE 67, Page ID # 873.)

That should have ended this litigation.  Taxpayers received all the relief appropriate to a refund suit.  The District Court did not state that it was reinstating or reviving the claims for nonmonetary relief that taxpayers had previously abandoned (and that the District Court had dismissed), and indeed it could not have done so under governing law of the case principles.  *See United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997).  Nor could taxpayers have resurrected those claims as a freestanding matter: they identified no ongoing harm or threat of enforcement tied to Notice 2007-83, and thus would have lacked standing to maintain such a suit.  (*See* Stay Opinion, RE 81, Page ID # 1154) (District Court observing that the Government cannot enforce Notice 2007-83 against taxpayers even without a vacatur).

The District Court nevertheless believed that it was required to vacate Notice 2007-83. That belief reflects a fundamental misunderstanding of bedrock administrative law principles. To begin, even assuming that vacatur might be an available remedy under the APA's judicial review provisions, *but see infra* pp. 26-39, a refund suit does not proceed under those provisions, but instead under the statutory cause of action and waiver of immunity specially applicable to such suits. 26 U.S.C. § 7422(a); 28 U.S.C. § 1346(a)(1). As Section 703 of the APA makes clear, the APA does not displace other congressionally enacted procedures for judicial review, instead providing that where a "special statutory review proceeding" exists, that proceeding governs even when a plaintiff alleges a violation of procedural requirements of the APA. 5 U.S.C. § 703; *see also Memphis Tr. Co. v. Board of Governors of Fed. Reserve Sys.*, 584 F.2d 921, 925 (6th Cir. 1978). The APA thus "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (quotation omitted); *see, e.g.*, *Larson v. United States*, 888 F.3d 578, 587 (2d Cir. 2018); *Cohen v. United States*, 650 F.3d 717,

738 (D.C. Cir. 2011) (en banc) (Kavanaugh, J., dissenting). Put simply, "the APA's judicial review proceedings were not intended to supplant existing statutory schemes that set forth clear pre-existing procedures for review." *Estate of Streightoff v. Commissioner*, 954 F.3d 713, 722 (5th Cir. 2020); *QinetiQ US Holdings, Inc. & Subs. v. Commissioner*, 845 F.3d 555, 561 (4th Cir. 2017).

Taxpayers' complaint, the District Court's opinion partially granting the Government's motion to dismiss, the District Court's opinion granting the Government's motion for summary judgment, and this Court's prior opinion all referred to this case as a refund suit, invoked the specific statutory provisions governing tax refund suits, or both. (Complaint, RE 1, Page ID # 4; Order, RE 22, Page ID # 256; Opinion, RE 45, Page ID # 604; *Mann Constr.*, 27 F.4th at 1142.) Taxpayers have thus obtained all the relief to which they are entitled pursuant to the applicable "special statutory review proceeding," and there was no basis for the District Court to go further and vacate Notice 2007-83. *Cf. Drs. Hill & Thomas Co. v. United States*, 392 F.2d 204, 204-05 (6th Cir. 1968).

2.  The District Court's approach would have been improper even if this were not a suit under a special statutory review proceeding. Even in APA cases, courts have recognized that there is no occasion to grant relief running against an agency rule in the abstract where a party challenges a concrete action taken under that rule.  For example, in *State of Nebraska Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*, a district court reviewed a federal agency's rejection of a state's cost allocation plan under a federal program for foster care and adoption services.  435 F.3d 326, 327-29 (D.C. Cir. 2006).  The agency had rejected the State's plan on the basis of multiple "policy announcements" promulgated without notice and comment.  *Id.* at 328. The district court held that the policy announcements should have received notice and comment, granted summary judgment to the State, and vacated the policy announcements.  *Id.* at 328-29.  The D.C. Circuit reversed the vacatur, explaining that the State "did not challenge the validity of the . . . announcements apart from their application as binding rules in the case before the [agency], and accordingly did not make out a case for continuing relief," and the court therefore held that "the district court abused its discretion in vacating" the announcements.

-19-

*Id.* at 330.  Vacatur is not appropriate, the court explained, where "only the decision, not the rule on which it depends, has been challenged." *Id.*; *see also Baeder v. Heckler*, 768 F.2d 547, 553 (3d Cir. 1987) (reversing injunction that barred application of a Social Security regulation in other Social Security adjudications because the court lacked "authority to issue an injunction aimed at controlling the Secretary's behavior in every disability case in the country" in the context of a single "claim for disability benefits").

The same is true here: taxpayers challenge the imposition of the penalties (and the corresponding refusal to issue a refund).  Notice 2007-83 is implicated only insofar as it was relied upon in assessing the penalties.  There is no occasion for "continuing relief" related to the Notice where those penalties have been held unlawful (and have already been refunded).  Indeed, if it were otherwise, the practice of intercircuit nonacquiescence—in which agencies such as the IRS or Social Security Administration give effect to the decisions of courts of

appeals within those circuits, while applying their ordinary rules in other circuits—simply would not exist.[1]

### B.   Neither this Court's prior opinion nor the APA required vacatur in a refund suit

The District Court did not engage with the principles described above.  And the District Court acknowledged that the relief it entered was entirely gratuitous as to these taxpayers, against whom "no penalties can be assessed" under the Notice as a result of the judgment here and this Court's precedent (which the IRS has made clear it will follow within this Circuit).  (Stay Opinion, RE 81, Page ID # 1154); *see* Announcement 2022-28, Listed Transactions, 2022 WL 17491928 (Dec. 27, 2022).  And the District Court insisted that it did not matter that taxpayers had long before abandoned their claims for nonmonetary relief.

---

[1] Indeed, one of the academic articles on which the District Court repeatedly relied recognizes this distinction, observing that in a challenge to an "ordinary adjudication" there is no occasion for broader relief because "all that the court is formally being asked to decide is whether the agency handled that particular adjudication correctly," even if the answer to that question "may *implicate* the rule's validity." Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121, 1129 n.36 (2020); *see id.* at 1178-80.

-21-

The District Court's conclusion that broad relief was nonetheless warranted was largely premised on this Court's statement, at the end of its opinion, that the determination that the challenged notice was improperly promulgated meant that the Court "must set it aside." *Mann Constr.*, 27 F.4th at 1148. From that phrase, the District Court inferred that it was required to vacate Notice 2007-83 nationwide. The District Court believed the same result flowed from the text of the APA itself, relying on the APA's statement that courts "shall hold unlawful and set aside agency action" found to be unlawful, 5 U.S.C. § 706(2), to conclude that the Notice must be vacated nationwide. Neither rationale justifies the District Court's departure from the background principles described above.

We first address this Court's prior opinion. As the District Court itself acknowledged, this Court's prior opinion did "not expressly address[ ]" whether Notice 2007-83 should be vacated. (Opinion, RE 73, Page ID # 1081.) Nor would there have been any reason for this Court to have addressed vacatur, where taxpayers had abandoned their claims for nonmonetary relief and neither party briefed the appropriate

remedy to be awarded if this Court were to reverse.  (Order, RE 22, Page ID # 256; Opinion, RE 45, Page ID # 604.)

Rather, it appears that the Court used the phrase "set aside" in the mundane sense of disregarding the Notice for purposes of determining whether the penalties were properly assessed.  *See Webster's New International Dictionary of the English Language* 2291 (2d ed. 1958) (defining "set aside" as a: "To put to one side; discard; dismiss" and b: "To reject from consideration; overrule") (emphasis omitted).  Setting aside the Notice, there was no basis for the penalties, and the taxpayers were entitled to judgment on their refund claim.  But that single sentence did not transform a dispute about penalties applicable to these taxpayers into a nationwide adjudication of the rights of all taxpayers potentially affected by Notice 2007-83.  There is no indication that this Court meant a single phrase of its opinion to effect such a sweeping change in the scope of this litigation, particularly where such a change would be inconsistent with the very nature of a refund action.

That usage of "set aside" is also entirely consistent with the APA itself.  Section 706 of the APA addresses the "Scope of Review" and

provides that a "reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be" "arbitrary [and] capricious," "without observance of procedure required by law," or "otherwise not in accordance with law." 5 U.S.C. § 706(2). Section 706(2) thus sets forth the substantive standard for finding agency action "unlawful," and must be capable of application in all forms of action where Section 706 applies. The APA expressly permits, for example, challenges to agency action to be raised in "habeas corpus" actions and "in civil or criminal proceedings for judicial enforcement." 5 U.S.C. § 703. No one would suggest that a court hearing a habeas petition or an enforcement action could vacate a regulation. And, as discussed, courts do not use review of an adjudication—in which an agency has imposed a penalty, granted or denied an application or benefit, or taken other party-specific action—as a vehicle for universal invalidation of agency rules held to be unlawful. *See State of Nebraska*, 435 F.3d at 330; *Baeder*, 768 F.2d at 553. But it is entirely sensible for a court to disregard unlawful agency action in all of those contexts before entering relief appropriate to the case, such as issuing habeas relief or denying enforcement. The same point holds true for the

instruction that a court should disregard unfounded "findings" or "conclusions"; it makes little sense to say that a court "vacates" those as opposed to simply ignoring them for purposes of resolving the case before it.

Indeed, this case illustrates the point. Taxpayers' refund claim here was predicated on an *APA theory*, just as a habeas action, challenge to a Social Security benefits determination, or defense to an enforcement action in federal court may be based on a theory that some regulation is improper under the APA. This Court thus applied APA principles in adjudicating the claim, including the requirement that it was to "set aside" unlawful agency action in deciding the case before it, even though a refund suit does not proceed under the APA cause of action.

Statutes and judicial opinions often use the phrase "set aside" in this sense when they refer to courts' "setting aside" unconstitutional legislation. *See*, *e.g.*, Act of Aug. 24, 1937, ch. 754, § 3, 50 Stat. 751, 752-53; *Mallinckrodt Chem. Works v. Missouri ex rel. Jones*, 238 U.S. 41, 54 (1915); *see also* John Harrison, *Section 706 of the Administrative Procedure Act Does Not Call for Universal Injunctions or Other*

*Universal Remedies*, 37 Yale J. on Reg. Bull. 37, 43-45 (2020) (discussing other examples). But the phrasing in that context means that courts disregard unconstitutional statutes when deciding the cases before them, not that they vacate the statutes universally. After all, courts "have no power *per se* to review and annul acts of Congress on the ground that they are unconstitutional." *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923). Instead, judicial review "amounts to little more than the negative power to disregard an unconstitutional enactment." *Id.*; *accord Arizona v. Biden ("Arizona II")*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring) ("we do not remove—erase—from legislative codes unconstitutional provisions") (citation and internal quotations omitted).[2] There is nothing that suggests that this Court's prior opinion used the phrase in anything other than this sense, particularly given that this Court and the parties addressed the first appeal on the premise that taxpayers sought a refund (and only a refund).

---

[2] Chief Judge Sutton previously offered essentially the same analysis when concurring in an opinion granting a stay pending appeal. *See Arizona v. Biden ("Arizona I")*, 31 F.4th 469, 483 (6th Cir. 2022).

## II

## Even if APA remedies applied, the District Court's vacatur order was erroneous

The threshold errors described above are sufficient basis to reverse the District Court. But the District Court compounded its errors in adopting an expansive and non-discretionary view of vacatur under the APA. As we explain in detail below, the APA does not authorize vacatur of agency rules even where (unlike here) those rules are subject to direct challenge. And even if the APA did contemplate vacatur, it would be an equitable remedy subject to the court's equitable discretion, including the discretion to tailor that remedy or withhold it altogether—particularly where other remedies provide the plaintiff with complete relief.

### A.    The APA does not independently authorize universal vacatur of agency rules

As discussed above, Section 706(2) of the APA provides that a "reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be" unsupported or unlawful in various respects. Some courts have mistakenly read that language as establishing a particular remedy—"setting aside" agency action—and have equated that remedy to "vacatur" of the agency action.

The phrase "set aside" alone does not "tell us one way or another whether to nullify illegal administrative action or not to enforce it in the case with the named litigants," nor does the APA directly specify "against whom an unlawful agency action must be 'set aside.'" *Arizona II*, 40 F.4th at 397 (Sutton, C.J., concurring). But the text, structure, and history of the APA demonstrate that that "unremarkable language" did not "create a new and far-reaching power" that differs radically from other remedies that courts issue. *Id.* at 396.

As discussed above, Section 706(2), properly construed, simply provides a standard of review that directs a court to decline to give effect to an unlawful agency action in deciding the case at hand and granting relief to the parties before it. That reading enables application of the "set aside" instruction in all cases in which it applies—including this one, which otherwise proceeds under a special statutory review provision rather than the APA itself.

Of course, when a court employing the standard of review articulated in Section 706(2) declines to apply an agency action to the case before it on the ground that the action is unlawful, it may issue relief to give effect to that decision. But a different provision,

Section 703, points *outside* the APA for available remedies.  As
discussed, Section 703 points first to any applicable "special statutory
review proceeding," 5 U.S.C. § 703, which may authorize a court of
appeals to vacate an order or rule, *see, e.g.*, 28 U.S.C. § 2342, or may (as
here) provide monetary remedies, *id.* § 1346(a)(1); 26 U.S.C. § 7422(a).
Where no such proceeding is available, however, Section 703 provides
that "[t]he form of proceeding" under the APA is a traditional "form of
legal action," such as "actions for declaratory judgments or writs of
prohibitory or mandatory injunction."

The APA thus preserves traditional remedies available to
challenge unlawful agency action before the enactment of the APA.
Before the APA, in the absence of a special review statute, injured
parties could challenge agency action through "nonstatutory" suits in
equity against the responsible federal officer, most often suits seeking
injunctions.  *See, e.g.*, *American Sch. of Magnetic Healing v. McAnnulty*,
187 U.S. 94 (1902); *see also Final Report of the Attorney General's
Committee on Administrative Procedure* 81 (1941) (noting that "the
injunction is the remedy normally used" in nonstatutory suits "for the
protection of the individual against illegal official action" but that

courts also employed remedies such as "habeas corpus, certiorari, mandamus, and prohibition" and could issue "declaratory judgments"). This tradition of nonstatutory review was carried forward by the APA. *See Air New Zealand Ltd. v. Civil Aeronautics Bd.*, 726 F.2d 832, 836 & n.3 (D.C. Cir. 1984) (Scalia, J.) (observing that courts historically "relied … upon the so-called prerogative writs, particularly mandamus, certiorari and injunction" for judicial review of agency action and that after the APA "all nonstatutory review is now, in a sense, statutory review").

The historical record confirms that Congress expected APA litigants to avail themselves of traditional remedies under Section 703 and did not intend to create a novel remedy of vacatur (universal or otherwise) in Section 706. The legislative history explains that the APA "declares the existing law concerning the scope of judicial review." S. Rep. No. 752, 79th Cong., 1st Sess. 27, 44 (1945) ("Senate Report"). And the Attorney General similarly observed shortly after the APA's enactment that the statute "constitute[s] a general restatement of the principles of judicial review embodied in many statutes and judicial decisions." U.S. Dep't of Justice, *Attorney General's Manual on the*

*Administrative Procedure Act* (*"Attorney General's Manual"*) 93 (1947).[3]

The legislative history also repeatedly refers to Section 703 as

governing remedies. *See, e.g.*, Administrative Procedure Act, S. No. 79-

248, 2d Sess., at 36-37 (1946); 92 Cong. Rec. 2159 (1946). And both

committee reports paraphrase Section 706(2) as authorizing a court to

hold agency action unlawful, without mentioning the phrase "set aside"

(*see* Senate Report 27; H.R. Rep. No. 79-1980, 2d Sess., at 44 (1946))—

an unlikely choice if that language was intended to establish a new (and

potentially far-reaching) remedy.

---

[3] This premise is reinforced throughout the Manual. *See, e.g., Attorney General's Manual* at 9 (one of the four "Fundamental Concepts" of the APA was to "*restate* the law of judicial review") (emphasis added), 93 ("[t]he provisions of section 10 constitute a general restatement of the principles of judicial review embodied in many statutes and judicial decisions. Section 10, it must be emphasized, deals largely with principles. It not only does not supersede special statutory review proceedings, but also generally leaves the mechanics of judicial review to be governed by other statutes and by judicial rules."), 108 ("Courts having jurisdiction have always exercised the power in appropriate cases to set aside agency action which they found to be" unlawful). The Supreme Court considers the Manual to be persuasive authority in interpreting the APA, given the Department of Justice's critical role in the APA's enactment. *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63-64 (2004) (collecting cases); *Attorney General's Manual* at 5-7 (describing Department's role).

Interpreting Section 706 to authorize vacatur of agency rules, a new form of relief with no clear historical counterpart, would bring about a particularly striking innovation given that remedy's departure from longstanding remedial principles.  Remedies "ordinarily 'operate with respect to specific parties,'" rather than "'on legal rules in the abstract,'" *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (citation omitted), and equitable remedies are no exception: the "general rule" is that equitable relief "'should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'"  *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *Arizona II*, 40 F.4th at 397 (Sutton, C.J., concurring).  There is no indication that Congress, in enacting the APA against the background rule that statutory remedies should be construed in accordance with "traditions of equity practice," *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944), sought to "upset the bedrock practice of case-by-case judgments with respect to the parties in each case."  *Arizona II*, 40 F.4th at 396 (Sutton, C.J., concurring).  The same principles are at play under Article III, where plaintiffs must ordinarily demonstrate standing not only for each claim that they press,

but also "for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021); *see also id.* ("standing is not dispensed in gross"); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).  And even once standing to seek a particular remedy is established, Article III generally requires that "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018).

The District Court's order here was a stark departure from these principles.  The injury of which taxpayers complained—namely the imposition of penalties—was fully and completely redressed when the Government refunded the amounts at issue.  When the District Court went beyond a monetary refund and vacated Notice 2007-83 nationwide, it was awarding relief that had no discernible impact on taxpayers' injury and for which the only possible beneficiaries were nonparties.  And the District Court acknowledged as much, recognizing that even without a vacatur "no penalties can be assessed against Plaintiffs under IRS Notice 2007-83."  (Stay Opinion, RE 81, Page ID # 1154.)

Moreover, reading Section 706(2) to authorize hundreds of district judges around the nation to grant universal relief in every APA case would perpetuate all of the now-familiar problems with nationwide injunctions. *See, e.g.*, *DHS v. New York*, 140 S. Ct. 599, 599-601 (2020) (Gorsuch, J., concurring); *Trump v. Hawaii*, 138 S. Ct. 2392, 2425-33 (2018) (Thomas, J., concurring); *Commonwealth v. Biden*, 57 F.4th 545, 556-57 (6th Cir. 2023) (district court abused its discretion by extending injunctive relief to nonparties); *Arizona II*, 40 F.4th at 395-98 (Sutton, C.J., concurring).

As a threshold matter, the federal judicial system is designed to "encourage[ ] multiple judges and multiple circuits to weigh in only after careful deliberation, a process that permits the airing of competing views." *DHS*, 140 S. Ct. at 600 (Gorsuch, J., concurring). Nationwide relief, by contrast, short circuits debate by purporting to let a single court conclusively resolve an issue for the entire country. *Id.* at 600-01; *see also Arizona II*, 40 F.4th at 398 (Sutton, C.J., concurring) ("nationwide injunctions have become a springing easement on the customary deliberative process for dealing with issues of national importance").

This is not merely an abstract concern.  *DHS*, 140 S. Ct. at 599-600 (Gorsuch, J., concurring) (noting the recent proliferation of nationwide injunctions).  Even viewed in just the tax context, the problem of nationwide relief is readily apparent.  For example, this Court and the Eleventh Circuit recently reached different conclusions about the validity of a Treasury regulation that governs the deduction available to taxpayers who make a qualifying donation of a conservation easement.  *Compare Oakbrook Land Holdings, LLC v. Commissioner*, 28 F.4th 700, 710-22 (6th Cir. 2022) (holding that the regulation was valid and relying on it to determine the taxpayer's liability) *with Hewitt v. Commissioner*, 21 F.4th 1336, 1342-53 (11th Cir. 2021) (reaching the opposite conclusion and disregarding the regulation).  Had the Eleventh Circuit gone further and vacated the regulation nationwide, its decision could have had the practical effect of overturning this Court's decision.  *See DHS*, 140 S. Ct. at 600-01 (Gorsuch, J., concurring).  And the District Court's vacatur order has already raised questions in other courts that were hearing challenges to Notice 2007-83.  *See Oom Inc., v. United States*, 2023 WL 3058493, at *4 (D.N.J. Apr. 24, 2023) (declining to determine the meaning of the District Court's statements in this case

concerning universal vacatur); *Govig & Associates, Inc. v. United States*, 2023 WL 2614910, at \*4-\*5 (D. Ariz. Mar. 23, 2023) (concluding that the District Court's statements in this case concerning universal vacatur were dicta).

Furthermore, the potential award of nationwide relief creates a procedural morass. Ordinarily, parties have an incentive to "methodically develop[ ] arguments and evidence in cases limited to the parties at hand." *DHS*, 140 S. Ct. at 600 (Gorsuch, J., concurring). The availability of nationwide relief, however, often raises the stakes of a single district court's judgment sufficiently to require the Government to seek immediate relief, which "loads more and more carriage on the emergency dockets of the federal courts." *Arizona II*, 40 F.4th at 396 (Sutton, C.J., concurring). And it does so without any of the procedural safeguards afforded by class actions brought pursuant to Fed. R. Civ. P. 23, which are specifically designed to ensure that judgments only bind third parties in appropriate circumstances. *Id.*

Finally, the potential award of nationwide relief erodes confidence in the judicial system by encouraging litigants "to shop for a friendly forum" amongst the "more than 1,000 active and senior district court

judges, sitting across 94 judicial districts," any one of whom has the potential to "stay the challenged rule across the country." *DHS*, 140 S. Ct. at 600-01 (Gorsuch, J., concurring). "And the stakes are asymmetric. … A single loss [for the Government] and the policy goes on ice—possibly for good …" *Id.* at 601.

The District Court failed to address any of the foregoing concerns, instead simply noting that nationwide injunctions are technically distinct from nationwide vacaturs. (Opinion, RE 73, Page ID # 1083-1085.) Whatever the truth of that statement, the practical effect of the two remedies is the same in relevant respects: an agency cannot enforce the challenged rule anywhere, against anyone. Indeed, the District Court repeatedly said as much: "vacatur of an unlawful agency action is not limited to the named plaintiffs," "unwinds the challenged action altogether," and prevents the rule from being "applied to anyone." (Opinion, RE 73, Page ID # 1082, 1085 (citations and internal quotations omitted omitted).) Thus, the concerns applicable to nationwide injunctions remain just as salient in the vacatur context.

In denying the Government's motion to stay the nationwide vacatur of Notice 2007-83 pending appeal, the District Court suggested

that the Government remains free to argue, in other circuits, that the

nationwide vacatur of Notice 2007-83 in this case does not actually

prevent the enforcement of the Notice outside the Sixth Circuit.  (Stay

Opinion, RE 81, Page ID # 1152.)  Setting aside the question of how

that understanding could be squared with the District Court's repeated

description of vacatur as eliminating Notice 2007-83 and as not being

confined to the court's territorial jurisdiction or the parties before it, the

District Court did not explain why it would be preferable—or sensible—

to leave the agency and taxpayers nationwide uncertain about the

status of Notice 2007-83 outside of this Circuit, or how taxpayers or the

agency would be expected to make compliance and enforcement

decisions in light of that uncertainty.  If the District Court intended to

leave the Government free to enforce Notice 2007-83 elsewhere, it

should have exercised its equitable discretion to decline to enter a

vacatur or to limit its remedy.  *See infra* pp. 39-46.

    The District Court relied on cases from the D.C. Circuit in holding

that vacatur is an available remedy under the APA.  (Opinion, RE 73,

Page ID # 1082, 1083.)  The decisions of the D.C. Circuit have an

outsized precedential impact because the general venue statute,

28 U.S.C. § 1391(e), allows plaintiffs to decide whether to bring most APA actions within the D.C. Circuit or their home circuit, making an adverse decision in the D.C. Circuit available as precedent to every prospective plaintiff. *National Mining Association v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409-10 (D.C. Cir. 1998). Thus, there is often little incentive for that court to clarify, or the Government to contest, the territorial scope of any remedy in that court, and it is unsurprising that the D.C. Circuit has not engaged in any depth with the points we have outlined above. At the same time, however, that court has suggested that cases in other courts differ: "agency defeats in other circuits cannot produce as severe an effect" because "venue restrictions would exclude many would-be plaintiffs from access to the invalidating court." *Id.*

Finally, this Court recently cited Section 706(2)(A) in stating that "[r]eviewing courts certainly have the power to vacate an agency action they find unlawful." *Sierra Club v. U.S. EPA*, 60 F.4th 1008, 1021 (6th Cir. 2023). That statement was dicta thrice over. First, the Court went on to explain that it "need not decide whether we can vacate the [agency action], however, because the applicable standard does not counsel

vacatur" even if vacatur were available. *Id.* at 1022. Second, *Sierra Club* arose in the context of a special statutory review proceeding—a petition for review under the Clean Air Act, which carries its own review and remedy provisions. *See id.* at 1021 n.5 (observing that the Court had jurisdiction under 42 U.S.C. § 7607(b)(1) and was applying a standard of review drawn from § 7607(d)(9), which allows courts to "reverse" actions taken by the agency). And third, *Sierra Club* did not involve a challenge to an agency rule of general applicability, but instead addressed only the agency's decision to remove a provision from the State of Ohio's State Implementation Plan under the Clean Air Act. *Id.* at 1012. That dicta is also of little persuasive value: this Court did not explain the basis of its statement that vacatur was available, and the one Supreme Court case it cited did not address vacatur. *See id.* at 1021 (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983)).

### B.    Even if the APA authorized universal vacatur, that remedy would be a discretionary one subject to equitable balancing

As the foregoing points illustrate, the text, structure, and legislative history of the APA do not support the availability of vacatur

as a remedy in challenges to agency rules.  But even if such a remedy
were available under the APA, that does not mean that such relief
would be necessary or appropriate in every case where a court
determines that an APA violation has occurred.  The District Court,
however, refused to consider whether lesser relief was appropriate and
held that it was required to award nationwide vacatur.  (Opinion,
RE 73, Page ID # 1083-1085.)

At the outset, the District Court erred in characterizing vacatur as
a legal, rather than equitable, remedy.  (Opinion, RE 73, Page ID
# 1083.)  Vacatur—like other nonmonetary remedies—is an equitable
remedy.  *See High Cty. Conservation Advocates v. U.S. Forest Serv.*,
951 F.3d 1217, 1229 (10th Cir. 2020) ("our traditional equitable powers
to fashion appropriate relief … are retained under the APA"); *Black
Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271,
1290 (11th Cir. 2015) ("Undeniably, vacatur is 'equitable relief.'"); *State
of Nebraska*, 435 F.3d at 330; *see also Haines v. Fed. Motor Carrier
Safety Admin.*, 814 F.3d 417, 425 (6th Cir. 2016) (observing that Section
702 "waives sovereign immunity for claims for *equitable relief* against
federal officials," but not money damages) (citation and internal

quotations omitted); *Arizona II*, 40 F.4th at 395 (Sutton, C.J.,
concurring) (explaining that remedies "emerge from a federal court's
equitable power").

Like other equitable remedies, then, vacatur would be subject to
ordinary equitable principles.  Courts "possess broad discretion" to
fashion appropriate remedies under the APA, just as they possess broad
discretion to fashion appropriate equitable remedies generally.  *Black
Warrior*, 781 F.3d at 1290.  In fashioning that relief, the court pays
regard to equitable considerations that may make any particular relief
inappropriate; as the Supreme Court has explained, "[t]he essence of
equity jurisdiction has been the power of the Chancellor to do equity
and to mould each decree to the necessities of the particular case,"
enabling the "adjustment and reconciliation between the public interest
and private needs as well as between competing private claims."  *Hecht
Co.*, 321 U.S. at 329-30.

Two such principles are particularly relevant here.  The first is
the principle—already discussed above—that equitable remedies should
"be no more burdensome … than necessary to provide complete relief to
the plaintiffs."  *Califano*, 442 U.S. at 702.  The second is that in

fashioning equitable relief, courts ordinarily weigh equitable considerations that may make any particular relief inappropriate. This includes the power to withhold relief altogether even after success on the merits has been conclusively shown. *See, e.g.*, *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 32 (2009) ("An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course."); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) ("[A] federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law."). There would thus be no obligation to issue a vacatur at all. And even where a vacatur may be available, a court may properly decline to enter one if other remedies (such as an injunction or declaratory judgment) would provide adequate relief to the complaining party.[4]

---

[4] Several other district courts in this Circuit have exercised greater remedial restraint than the District Court here. *GBX Assocs. v. United States*, 2022 WL 16923886 (N.D. Ohio Nov. 14, 2022) (setting IRS notice aside only as to particular plaintiff); *Skyworks, Ltd. v. Ctrs. for Disease Control & Prevention*, 542 F. Supp. 3d 719, 736 (N.D. Ohio 2021) (ruling regarding legality of eviction moratorium bound only the parties to the litigation and their members); *see also Biggs v. Quicken Loans, Inc.*, 990 F. Supp. 2d 780, 784-85 (E.D. Mich. 2014) ("[T]he precedent and practice of federal judicial review of agency action strongly suggests that such review proceeds on a circuit-by-circuit basis, just as judicial review of an ordinary statute would.").

Courts have thus consistently held that they may, in appropriate circumstances, remand a defective agency rule to the agency without vacating it. *Black Warrior*, 781 F.3d at 1290 (citing *Cal. Cmtys. Against Toxics v. U.S. EPA*, 688 F.3d 989, 994 (9th Cir. 2012) (per curiam); *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1380 (Fed. Cir. 2001); *Cent. Me. Power Co. v. FERC*, 252 F.3d 34, 48 (1st Cir. 2001); *Cent. & S.W. Servs., Inc. v. U.S. EPA*, 220 F.3d 683, 692 (5th Cir. 2000); *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993)); *see also Sierra Club*, 60 F.4th at 1021-23 (granting agency's request for voluntary remand without vacatur after considering "the overall equities and practicalit[ies] of the alternatives") (citation and internal quotations omitted). And in determining whether vacatur is warranted, courts generally consider factors analogous to those that govern the award of other forms of equitable relief, such as preliminary injunctions. *See, e.g.*, *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety and Health Admin.*, 920 F.2d 960, 966-67 (D.C. Cir. 1990). Given this background, it is unsurprising that the District Court cited no court of

appeals decision adopting its view that vacatur inexorably follows every time agency action is held to be unlawful.

Here, the District Court erroneously concluded that it had no discretion to limit its relief to the parties to this case.  Given that courts exercising their equitable powers have the authority to withhold relief even when success on the merits is demonstrated, they would surely also retain the authority to craft a more tailored remedy that accords with traditional equitable principles, such as vacating an agency rule only as to the parties before the court.  And here, the District Court should have considered whether to withhold further equitable relief altogether, given that the taxpayers have received the relief they actually requested and face no prospect of future action under Notice 2007-83.

The District Court's reliance on the text of the APA—and specifically the APA's statement that courts "shall" set aside unlawful agency action—does not dictate a contrary result.  Courts "do not lightly assume that Congress has intended to depart from established principles" of equity, *Romero-Barcelo*, 456 U.S. at 313, and ordinarily courts expect that where Congress intends a "drastic departure from

the traditions of equity practice," Congress will make "an unequivocal statement of its purpose," *Hecht Co.*, 321 U.S. at 329.  The APA contains the contrary: Congress expressly provided that its authorization of judicial review does not affect "the power or duty of the court to … deny relief on any … equitable ground."  5 U.S.C. § 702(1).

Even without that express preservation of equitable power, the "set aside" language of Section 706(2) would not provide the sort of clear statement required to displace ordinary equitable principles, as it neither refers to vacatur nor specifies as to whom the agency action should be set aside.  *See, e.g.*, *Arizona II*, 40 F.4th at 397 (Sutton, C.J., concurring); *Virginia Soc'y for Human Life, Inc. v. Fed. Election Comm'n*, 263 F.3d 379, 394 (4th Cir. 2001) (holding that "[n]othing in the language of the APA" requires that courts enter nationwide relief), *overruled on other grounds by The Real Truth About Abortion, Inc. v. FEC*, 681 F.3d 544 (4th Cir. 2012).

As a policy matter, it would also be odd to read Section 706(2) as not only authorizing, but mandating, nationwide vacatur.  The District Court correctly recognized that "'district courts should think twice—and perhaps twice again—before granting universal *anti-enforcement*

*injunctions* against the federal government.'"  (Opinion, RE 73, Page ID # 1083-1084 (quoting *Arizona I*, 31 F.4th at 484 (Sutton, C.J., concurring) (emphasis added).)  However, as we have explained, the same concerns raised by nationwide injunctions are also raised by nationwide vacaturs.  It would be anomalous to counsel district courts to, on one hand, enter nationwide injunctions only when absolutely necessary and then, on the other hand, counsel those same courts to enter nationwide vacaturs automatically and without consideration of countervailing interests.

# CONCLUSION

The District Court erred in entering an order vacating Notice

2007-83 nationwide, and that order should be reversed.

Respectfully submitted,

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

/s/ Geoffrey J. Klimas

| | |
|---|---|
| FRANCESCA UGOLINI | (202) 514-3361 |
| ELLEN PAGE DELSOLE | (202) 514-8128 |
| GEOFFREY J. KLIMAS | (202) 307-6346 |

  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel:*
DAWN N. ISON
  *United States Attorney*

MAY 22, 2023

15256052.1

## CERTIFICATE OF COMPLIANCE

**Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements**

1.  This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    [X]   this document contains 9,037 words, **or**

    [ ]   this brief uses a monospaced typeface and contains _____ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [X]   this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

    [ ]   this brief has been prepared in a monospaced typeface using _____ with _____.

(s)   /s/ Geoffrey J. Klimas

Attorney for   United States of America

Dated:      May 22, 2023

15256052.1

# RECORD ADDENDUM

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

### Pursuant to Sixth Circuit Rule 30(g)

| Record Entry No. | Description | Page ID Range |
|---|---|---|
| 1 | Complaint | 1-30 |
| 1-1 | Complaint Ex. 1 | 31-40 |
| 15 | Defendant's Motion to Dismiss | 71-112 |
| 22 | Order Granting in Part and Denying in Part Defendant's Motion to Dismiss | 230-265 |
| 45 | Opinion and Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiffs' Cross-Motion | 591-616 |
| 53 | Plaintiffs' Motion to Enforce Mandate | 757-767 |
| 59 | Defendant's Response to Plaintiffs' Motion to Enforce Mandate | 824-846 |
| 60 | Defendant's Response to Plaintiffs' Motion to Enforce Mandate Ex. A | 847-850 |
| 64 | Reply in Support of Plaintiffs' Motion to Enforce Mandate | 855-867 |
| 67 | Notice of Satisfaction | 873-874 |
| 73 | Opinion and Order Granting Plaintiffs' Motion to Enforce Mandate | 1079-1085 |
| 76 | Notice of Appeal | 1088-1089 |
| 81 | Opinion and Order Denying Defendant's Motion to Stay | 1148-1155 |

# STATUTORY ADDENDUM

5 U.S.C. § 702 ................................................................................51

5 U.S.C. § 703 ................................................................................52

5 U.S.C. § 704 ................................................................................53

5 U.S.C. § 706 ................................................................................54

26 U.S.C. § 7422(a) ........................................................................55

28 U.S.C. § 1346(a)(1) ....................................................................56

**5 U. S. C. § 702—Right of review**

A **person** suffering legal wrong because of **agency action**, or adversely affected or aggrieved by **agency action** within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking **relief** other than money damages and stating a claim that an **agency** or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor **relief** therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny **relief** on any other appropriate legal or equitable ground; or (2) confers authority to grant **relief** if any other statute that grants consent to suit expressly or impliedly forbids the **relief** which is sought.

## 5 U.S.C. § 703—Form and venue of proceeding

The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the **agency** by its official title, or the appropriate officer. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, **agency action** is subject to judicial review in civil or criminal proceedings for judicial enforcement.

**5 U.S.C. § 704—Actions reviewable**

Agency action made reviewable by statute and final **agency action** for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate **agency action** or ruling not directly reviewable is subject to review on the review of the final **agency action**. Except as otherwise expressly required by statute, **agency action** otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory **order,** for any form of reconsideration, or, unless the **agency** otherwise requires by **rule** and provides that the action meanwhile is inoperative, for an appeal to superior **agency** authority.

**5 U.S.C. § 706—Scope of review**

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

> **(1)** compel agency action unlawfully withheld or unreasonably delayed; and
>
> **(2)** hold unlawful and set aside agency action, findings, and conclusions found to be—
>
>> **(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>>
>> **(B)** contrary to constitutional right, power, privilege, or immunity;
>>
>> **(C)** in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>>
>> **(D)** without observance of procedure required by law;
>>
>> **(E)** unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>>
>> **(F)** unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

### 26 U.S.C. § 7422—Civil actions for refund

### (a) No suit prior to filing claim for refund

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

…

## 28 U.S. Code § 1346—United States as defendant

**(a)** The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

> **(1)** Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

...