# No. 23-1138

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

### MANN CONSTRUCTION, INC., BROOK WOOD, KIMBERLY WOOD, LEE COUGHLIN, AND DEBBIE COUGHLIN,

**Plaintiffs-Appellees**

**v.**

### UNITED STATES OF AMERICA,

**Defendant-Appellant**

---

## ON APPEAL FROM THE ORDER
## OF THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

---

## REPLY BRIEF FOR THE APPELLANT

---

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

FRANCESCA UGOLINI      (202) 514-3361
ELLEN PAGE DELSOLE      (202) 514-8128
GEOFFREY J. KLIMAS      (202) 307-6346
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel:*
DAWN N. ISON
  *United States Attorney*

# TABLE OF CONTENTS

**Page**

Table of contents.................................................................................i

Table of authorities ........................................................................ii

Glossary ..........................................................................................v

Introduction ................................................................................. 1

Argument:

I     The District Court erred in vacating Notice 2007-83 in a tax
      refund suit not brought under the APA ......................................... 6

II    Even if APA remedies applied, the District Court's vacatur
      order was erroneous ...................................................................... 12

      A.    The APA does not independently authorize universal
            vacatur of agency rules .........................................................12

      B.    Even if the APA authorized universal vacatur, that
            remedy would be a discretionary one subject to equitable
            balancing .............................................................................. 18

Conclusion...................................................................................25

Certificate of compliance .............................................................26

Record addendum ........................................................................27

-ii-

# TABLE OF AUTHORITIES

**Cases:**                                                                  **Page(s)**

*Arizona v. Biden,*
   40 F.4th 375 (6th Cir. 2022) ................................................. 23

*Baeder v. Heckler,*
   768 F.2d 547 (3d Cir. 1985) ................................................... 7

*Biggs v. Quicken Loans, Inc.,*
   990 F. Supp. 2d 780 (E.D. Mich. 2014) ................................. 21

*Bowen v. Massachusetts,*
   487 U.S. 879 (1988) ........................................................... 3, 7

*Califano v. Yamasaki,*
   442 U.S. 682 (1979) ............................................................. 18

*Dep't of Homeland Sec. v. New York,*
   140 S. Ct. 599 (2020) ........................................................... 23

*Flora v. United States,*
   362 U.S. 145 (1960) ............................................................. 10

*GBX Assocs. v. United States,*
   2022 WL 16923886 (N.D. Ohio Nov. 14, 2022) ..................... 21

*Hecht Co. v. Bowles,*
   321 U.S. 321 (1944) ............................................................. 12

*Hewitt v. Commissioner,*
   21 F.4th 1336 (11th Cir. 2021) ............................................. 24

*Jarrett v. United States,*
   ---- F.4th ----, 2023 WL 5319745 (6th Cir. 2023) ................. 2, 6

*Mann Constr., Inc. v. United States,*
   27 F.4th 1138 (6th Cir. 2022) ....................................... 4, 9, 11

*Martin v. Commissioner,*
   753 F.2d 1358 (6th Cir. 1985) .............................................. 10

*Oakbrook Land Holdings, LLC v. Commissioner,*
   28 F.4th 700 (6th Cir. 2022) ................................................ 24

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.,*
   139 S. Ct. 2051 (2019) ........................................................... 8

*The Real Truth About Abortion, Inc. v. FEC,*
   681 F.3d 544 (4th Cir. 2012) ................................................ 21

**Cases (cont'd):**                                                    **Page(s)**

*Sierra Club v. U.S. EPA,*
    60 F.4th 1008 (6th Cir. 2023) .................................................. 14

*Skyworks, Ltd. v. Ctrs. for Disease Control & Prevention,*
    542 F. Supp. 3d 719 (N.D. Ohio 2021).................................... 21

*State of Nebraska Dep't of Health & Human Servs. v. Dep't of*
    *Health & Human Servs.,*
    435 F.3d 326 (D.C. Cir. 2006) .................................................. 7

*In re Taylor,*
    655 F.3d 274 (3d Cir. 2011) .................................................. 20

*Tompkins v. Cyr,*
    202 F.3d 770 (5th Cir. 2000) .................................................. 20

*United States v. AMC Entm't, Inc.,*
    549 F.3d 760 (9th Cir. 2008) .................................................. 22

*United States v. Lumbermens Mut. Cas. Co.,*
    917 F.2d 654 (1st Cir. 1990) .................................................. 20

*United States v. Mendoza,*
    464 U.S. 154 (1984) .............................................................. 22

*United States v. Texas,*
    143 S. Ct. 1964 (2023) ............................. 5, 8, 13, 16-17, 19, 22

*Virginia Soc'y for Human Life, Inc. v. Fed.*
    *Election Comm'n,*
    263 F.3d 379 (4th Cir. 2001) .................................................. 21

**Statutes:**

Act of Aug. 24, 1937, ch. 754, § 3, 50 Stat. 751 .............................. 17

Administrative Procedure Act (5 U.S.C. § 551, *et seq.*):

    § 702 ....................................................................................... 18
    § 702(1) .................................................................................. 18
    § 703 ............................................................................. 2, 5-6, 15-16
    § 706 ................................................................................. 5, 14-17
    § 706(1) .................................................................................. 15
    § 706(2) ................................................................. 5, 12, 15, 17

**Statutes (cont'd):**                                                          **Page**

Internal Revenue Code (26 U.S.C.):

§ 6404(b) ...................................................................................10
§ 7422(a) .....................................................................................2

28 U.S.C.:

§ 1346(a)(1) .................................................................................2

**Miscellaneous:**

Notice 2007-83, Abusive Trust Arrangements Utilizing Cash
Value Life Insurance Policies Purportedly to Provide Welfare
Benefits, 2007-2 C.B. 960, 2007 IRB LEXIS 920 (Oct. 17,
2007) ........................................................................... passim

Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo.
Wash. L. Rev. 1121 (2020) .......................................................8

John Harrison, *Vacatur of Rules under the Administrative
Procedure Act*, 40 Yale J. on Reg. Bull. 119 (2023)..............13

Wright & Miller, Special Limits on Jurisdiction—Separate
Appeal Requirements, 15A *Fed. Prac. & Proc.* § 3904
(3d ed. April 2023 Update)......................................................20

-v-

# GLOSSARY

| Term | Definition |
|------|-----------|
| APA | Administrative Procedure Act, 5 U.S.C. § 551, *et seq.* |
| Br. | Appellees' brief filed by taxpayers |
| IRS | Internal Revenue Service |
| Op. Br. | Appellant's opening brief filed by the United States |
| Taxpayers | Mann Construction, Inc., Brook Wood, Kimberly Wood, Lee Coughlin, and Debbie Coughlin |
| The Notice | Notice 2007-83, Abusive Trust Arrangements Utilizing Cash Value Life Insurance Policies Purportedly to Provide Welfare Benefits, 2007-2 C.B. 960, 2007 IRB LEXIS 920 (Oct. 17, 2007) |

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

———————

### No. 23-1138

## MANN CONSTRUCTION, INC., BROOK WOOD, KIMBERLY WOOD, LEE COUGHLIN, AND DEBBIE COUGHLIN,

**Plaintiffs-Appellees**

**v.**

## UNITED STATES OF AMERICA,

**Defendant-Appellant**

———————

## ON APPEAL FROM THE ORDER
## OF THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

———————

### REPLY BRIEF FOR THE APPELLANT

———————

This reply brief is addressed only to those points raised in the answering brief that we believe warrant a further response. With respect to those points not discussed herein, we rely on our opening brief.

## INTRODUCTION

Mann Construction, Inc., Brook Wood, Kimberly Wood, Lee Coughlin, and Debbie Coughlin (collectively, "taxpayers") brought the

instant refund suit to recover tax penalties they paid to the Internal

Revenue Service.  The question presented is whether the District Court

erred in concluding that taxpayers were entitled to not only a refund of

those penalties, but also nationwide vacatur of the IRS notice on which

those penalties were predicated, Notice 2007-83.  As we explained in

our opening brief, the court's vacatur order was erroneous for two

reasons.

1.  First, taxpayers brought this action pursuant to the statutory

cause of action and waiver of sovereign immunity specially applicable to

refund suits, 26 U.S.C. § 7422(a) and 28 U.S.C. § 1346(a)(1), under

which the scope of appropriate relief begins and ends with recovery of

the amount at issue.  (Op. Br. 13-15, 17); *Jarrett v. United States,* ----

F.4th ----, 2023 WL 5319745, at *4 (6th Cir. 2023) ("Refund suits exist

for a single purpose:  the recovery of any internal-revenue tax alleged to

have been erroneously or illegally assessed or collected.") (citation and

internal quotations omitted).  Taxpayers do not dispute that these

statutes constitute a "special statutory review proceeding" within the

meaning of Section 703 of the Administrative Procedure Act ("APA")

(5 U.S.C. § 551, *et seq.*).  (*See* Op. Br. 16-17.)  Nor do taxpayers dispute

that the APA "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (quotation omitted). And taxpayers make no pretense that vacatur of Notice 2007-83, much less nationwide vacatur, was necessary to provide them with any protection whatsoever from the Notice. (*See* Op. Br. 15.)

On appeal, taxpayers nonetheless contend that the District Court properly awarded a remedy that affords them no effective relief and operates solely to determine the rights of third parties. Taxpayers' contention is wrong for myriad reasons. To begin with, taxpayers fail to identify any case in which a court has awarded vacatur in a tax refund suit. This failure is unsurprising, given that a refund suit is a special statutory review proceeding for which the only statutorily prescribed remedy is a refund. *Supra*, p. 2. Moreover, even in cases where there is no applicable special statutory review proceeding, courts have declined to vacate a regulation when the injury that gave rise to judicial review was one or more concrete actions taken under the regulation. (Op. Br. 18-20.)

Rather than address these arguments, taxpayers assert that, in a prior appeal, this Court resolved the question of remedy in a single sentence ending with the words "we must set [Notice 2007-83] aside." (Br. 13 (quoting *Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1148 (6th Cir. 2022)); *id.* at 12-18.) This assertion simply begs the question: what did this Court mean when it used the phrase "set aside"? And taxpayers do not even attempt to reconcile their assertion with the fact that they had previously conceded their claims for declaratory and injunctive relief; that the District Court and this Court both understood this suit to be a refund action; that neither party had briefed or argued the question of remedy; and that this Court rendered its prior decision without considering either the status of refund suits as special statutory review proceedings or background principles that apply to review of agency action under the APA.

2.  Second, the District Court and taxpayers are wrong that the APA marks a dramatic break from traditional party-specific remedies. As we explained in our opening brief, the APA looks to traditional remedies like "declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus." (Op. Br. 27-28 (quoting

5 U.S.C. § 703).)  And the plain text of Section 703 is confirmed by pre-APA practice and equitable tradition, the APA's legislative history, and sources like the Attorney General's Manual drafted in the years immediately following the APA's enactment.  (Op. Br. 28-30.)  In turn, taxpayers' reliance on Section 706 of the APA is misplaced because that provision merely provides a rule of decision that can be applied in all APA proceedings.  (Op. Br. 24.)  Viewed in this light, Section 706(2)'s use of the phrase "set aside" is best understood as merely directing a reviewing court to disregard the challenged act when rendering a decision in the pending action.  (*Id.*)

The foregoing arguments are "plenty and serious enough to warrant careful consideration," *United States v. Texas*, 143 S. Ct. 1964, 1980 (2023) (Gorsuch, J., concurring in the judgment), but taxpayers ignore them.  Indeed, they decline to even cite Section 703, make no effort to explain how Section 706(2) applies in actions for "habeas corpus" or other proceedings in which vacatur is plainly inappropriate, and wholly fail to engage with the history of the APA or background equitable principles.  (*See* Op. Br. 22-24.)

-6-

Even if this Court were to accept taxpayers' position that nationwide vacatur is a potential remedy under the APA, it would still be subject to traditional equitable principles and balancing that the District Court declined to consider.  (*See* Op. Br. 39-46.)  Importantly, taxpayers do not dispute that the District Court erred in characterizing vacatur as a legal, rather than equitable, remedy.  (*See* Op. Br. 40-41.) Taxpayers also do not dispute that the court's broad vacatur order was unnecessary for their protection.  (*See* Op. Br. 32.)  And their scattershot efforts to justify the court's entry of such relief (Br. 35-42) depend on after-the-fact reasoning that is, at bottom, deeply flawed.

## ARGUMENT

### I

### The District Court erred in vacating Notice 2007-83 in a tax refund suit not brought under the APA

1.  As we explained in our opening brief, a refund suit is a special statutory review proceeding for purposes of 5 U.S.C. § 703.  (Op. Br. 16-17.)  Furthermore, where an applicable special statutory review proceeding exists, the APA requires parties to avail themselves of that proceeding.  (*Id.*)  And in a refund suit, the only statutorily prescribed remedy is a monetary refund.  (Op. Br. 13-15, 17); *cf. Jarrett,* 2023 WL

5319745 at *7 ("Refund lawsuits, as the name suggests and statutes confirm, operate retrospectively.  They determine the propriety of a previously assessed and previously paid tax, not future tax years."). Taxpayers do not dispute any of these points, which, standing alone, demonstrate that there was no basis for the District Court to vacate Notice 2007-83 in a refund suit.  *See Bowen*, 487 U.S. at 903 (explaining that the APA "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures") (quotation omitted).

Taxpayers likewise do not grapple with the related point that vacatur of Notice 2007-83 was inappropriate here because the injury giving rise to their suit was the IRS's failure to refund the penalties they had paid.  As we explained at pp. 18-20 of our opening brief, courts have recognized that there is no occasion to grant relief running against an agency rule in the abstract where a party challenges a separate concrete action the agency takes in reliance on that rule.  *See State of Nebraska Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006); *Baeder v. Heckler*, 768 F.2d 547, 553 (3d Cir. 1985).

-8-

For example, even though APA principles may apply in an action for habeas corpus or a declaratory judgment action, "no one thinks a court adjudicating a declaratory action or a habeas petition 'vacates' agency action along the way." *Texas*, 143 S. Ct. at 1983 (Gorsuch, J., concurring); *see also PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2063 (2019) (Kavanaugh, J., concurring) ("[I]f the district court disagrees with the agency's interpretation in an enforcement action, that ruling does not invalidate the order and has no effect on the agency's ability to enforce the order against others."). Even the academic article on which taxpayers rely (Br. 34) makes the same point. Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121, 1129 n.36 & 1178-80 (2020); (*see also* Op. Br. 20 n.1).

Taxpayers do not acknowledge the cases we cited in our opening brief that declined to universally invalidate agency rules held to be unlawful in the context of an adjudication pertaining to rights or liabilities of a particular party. Particularly telling, taxpayers fail to acknowledge the cases we cited from the D.C. and Third Circuits that so constrained the relief granted, even as taxpayers contend that these

circuits share their views concerning remedies under the APA.  (Br. 23.)
And given the foregoing background principles, it is perhaps
unsurprising that taxpayers do not cite a single case in which a court
reviewing an as-applied challenge to agency action ordered the sort of
sweeping vacatur awarded by the District Court here.

2.  Taxpayers' contrary arguments are unpersuasive.  First,
taxpayers observe that their complaint contained requests for non-
monetary relief.  (Br. 19-20.)  But taxpayers do not acknowledge, much
less attempt to explain, their statement in the District Court litigation
that they concurred in the Government's motion to dismiss "any claim
for injunctive or declaratory relief."  (*See* Exhibit, RE 60, Page ID
# 847.)  And as discussed in our opening brief, the District Court and
this Court both clearly understood what remained of the suit to be a
refund action; indeed, the District Court declared at the dispositive
motion stage that "the only claim for relief remaining" sought "a
judgment awarding damages in the amount of the" penalty.  (Order,
RE 22, Page ID # 243; *accord* Opinion, RE 45, Page ID #604); *see also*
*Mann Constr.*, 27 F.4th at 1142.

Next, taxpayers argue that the IRS's abatement of unpaid penalties for other tax years changes the nature of this suit. (Br. 8-9.) Taxpayers are wrong. There is no such thing as a freestanding action for abatement in district court, which would simply be another name for a refund suit in which the jurisdictional prerequisite of full payment has not been met. *See Flora v. United States*, 362 U.S. 145, 177 (1960); *Martin v. Commissioner*, 753 F.2d 1358, 1360 (6th Cir. 1985); *see also* 26 U.S.C. § 6404(b) ("No claim for abatement shall be filed by a taxpayer in respect of an assessment of any tax imposed under subtitle A or B."). Taxpayers cite no statutory or other authority that would have permitted them to bring an action for abatement, and they could not have done so. Nonetheless, the Government recognized that, in light of this Court's decision in the first appeal, the penalties for other tax years could not be sustained against these taxpayers; therefore, the IRS proactively addressed the issue through abatement. That administrative action did not convert this case into something other than a refund suit.

The preceding points also underscore the implausibility of taxpayers' claim (Br. 12-18) that this Court already directed vacatur of

the Notice.  This Court explained that taxpayers sued for a refund of

the penalties under the applicable special statutory review procedure.

*Mann Constr.*, 27 F.4th at 1142.  The parties did not brief—and this

Court did not address—the availability of any other remedy.  Notably,

the word "vacate" does not appear anywhere in this Court's opinion.

Taxpayers' claim thus rests on the assumption that, by using the

phrase "set aside" in its prior opinion, this Court, without the benefit of

any briefing or argument:

> (1) disregarded the nature of this suit as a special statutory review
>
> proceeding;
>
> (2) disregarded that taxpayers were challenging the IRS's failure
>
> to refund the penalties, rather than challenging Notice 2007-83
>
> directly; and
>
> (3) declared, for the first time, that universal vacatur is not only
>
> an available remedy under the APA, but also permissible in a tax
>
> refund suit.

Instead, as our brief explained, this Court used the phrase "set aside" in

the sense that term is used in other forms of judicial review, as simply

meaning that the Court was disregarding the Notice for purposes of

-12-

determining whether taxpayers were entitled to a  refund.  (Op. Br. 20-25.)

## II

### Even if APA remedies applied, the District Court's vacatur order was erroneous

Moreover, even if APA remedies were to apply in this context, the District Court's nationwide vacatur was erroneous because the APA does not authorize universal vacatur.  And even assuming *arguendo* that the APA does authorize universal vacatur, it would be subject to equitable balancing that the District Court erroneously refused to perform.

### A.    The APA does not independently authorize universal vacatur of agency rules

1.  Taxpayers' argument rests entirely on Section 706(2)'s directive that reviewing courts "set aside" agency action, findings, and conclusions found to be unlawful, which taxpayers read as authorizing, and even *requiring*, nationwide vacatur.  However, taxpayers do not dispute that statutory remedies should be construed in accordance with traditions of equity practice.  (*See* Op. Br. 31 (citing *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)).)  Nor do taxpayers dispute that nationwide vacatur would constitute a significant departure from ordinary

-13-

principles of equity, which generally confine equitable remedies to party-specific relief.  (*See* Op. Br. 31-32.)  Taxpayers also fail to identify any legislative history or history of pre-APA judicial practice, much less cases or other authorities from the decades immediately following the APA's enactment, supporting their view.  (*See* Op. Br. 28-30.)  And as Justice Gorsuch recently observed, "leading scholars who wrote extensively about the APA after its adoption apparently never noticed this supposed remedy." *Texas*, 143 S. Ct. at 1983 (Gorsuch, J., concurring).  *See also* John Harrison, *Vacatur of Rules under the Administrative Procedure Act*, 40 Yale J. on Reg. Bull. 119, 123-31 (2023) (discussing lack of historical evidence that "vacatur" was a known remedy around the time of APA's enactment).

Rather than address these points, taxpayers chiefly cite recent cases from other circuits that have stated vacatur is an available remedy under the APA.  (Br. 15, 21, 23-25.)  However, those cases largely assert as much with minimal analysis, as evidenced by taxpayers' failure to highlight anything about the courts' reasoning that persuasively makes the case for that assertion.  In particular, none of these cases engages with the points we advanced in our opening brief.

-14-

And these recent cases are, of course, not evidence about the meaning of the APA when it was enacted in 1946.

Taxpayers also repeatedly cite this Court's statement in *Sierra Club v. U.S. EPA*, 60 F.4th 1008, 1021 (6th Cir. 2023), that "[r]eviewing courts certainly have the power to vacate an agency action they find unlawful." In taxpayers' view, this statement means that vacatur is always an available remedy under the APA in every type of case. (Br. 8 n.1, 15, 21-22, 25.) But as explained in our opening brief, the context of this Court's statement does not support that reading, and the statement was dicta for several reasons—a point taxpayers do not squarely address. (*See* Op. Br. 38-39.) Nothing in *Sierra Club* or the APA supports taxpayers' contention that vacatur is universally authorized— indeed, required—in every challenge to agency action that implicates the APA. At most, *Sierra Club* would simply illustrate the proposition that the statute applicable to each type of agency action must be considered on its own terms to determine the appropriate remedy. *See* Op. Br. 28; *infra* pp. 16-18.

2. The statutory context provides further support for construing Section 706 as providing a rule of decision, rather than an independent

source of remedies.  As discussed at pp. 27-30 of our opening brief,

Section 703 directs reviewing courts outside the APA for remedies—

directing courts to award traditional remedies such as "declaratory

judgments or writs of prohibitory or mandatory injunction or habeas

corpus."  5 U.S.C. § 703.  Taxpayers offer no alternative understanding

of this language; indeed, they fail even to cite it.  And just as taxpayers

fail to address the statutory context in which Section 706 is situated,

they similarly fail to address its title, "Scope of Review."  (*See* Op.

Br. 22-23.)

Taxpayers' only nod to statutory context is their observation that

Section 706(1) refers to courts compelling agency action "unreasonably

delayed" or "unlawfully withheld."  (Br. 27.)  However, this does not

demonstrate that the immediately following provision, Section 706(2),

creates a new remedy that departs from longstanding equitable

principles.  To the contrary, Section 706(1) simply authorizes a court to

find that the agency erred by failing to act—by finding that an agency

has either "unreasonably delayed" or "unlawfully withheld" action—just

as Section 706(2) authorizes the court to find that the agency erred by

acting.  To the extent that Section 706(1) addresses remedies at all, it

does so by referring to a remedy already available before the APA and incorporated in Section 703, and thus "confirm[s] the availability of a traditional remedy to address agency *in*action." *Texas*, 143 S. Ct. at 1984 (Gorsuch, J., concurring).

3.  Pivoting away from the APA, taxpayers note that there are some special statutory review schemes that use the phrase "set aside"; that at least some of those schemes use the phrase "set aside" in conjunction with remedies; and that courts have sometimes construed the phrase "set aside" in those contexts as referring to vacatur.  (Br. 27-28.)  However, taxpayers fail to identify any canon of construction that supports using these other statutes, enacted decades apart and for different reasons, as a basis for interpreting Section 706.  Congress's use of the phrase "set aside" to refer to a remedy in other contexts has little bearing on the APA, where Congress separated remedies and the scope of review.

Moreover, notwithstanding taxpayers' cherry-picked list of statutes in which the phrase "set aside" may refer to vacatur, it is not difficult to find examples where Congress and the courts have used that phrase in precisely the fashion we describe.  For example, our opening

brief (p. 24) identified a statute enacted in 1937, which provided that

only a three-judge court could issue "interlocutory or permanent

injunction[s] suspending or restraining the enforcement, operation, or

execution of, or *setting aside*, in whole or in part, any Act of Congress"

on constitutional grounds. *See* Act of Aug. 24, 1937, ch. 754, § 3,

50 Stat. 751, 752-53 (emphasis added). And taxpayers do not dispute

that "federal courts have never enjoyed the power to 'vacate'

legislation." *Texas*, 143 S. Ct. at 1981 (Gorsuch, J., concurring).

The structure of the APA confirms that "set aside" is used in this

more limited fashion. Insofar as Section 706 is understood to refer to

the manner of review, Section 706(2) can be applied in the full panoply

of proceedings to which the APA has application, including actions for

habeas corpus, petitions for enforcement, or, indeed, a refund action

(where, if the taxpayer's entitlement to a refund turns on the validity of

administrative guidance, the court applies the APA's scope of review to

determine whether to disregard that guidance and order a refund). (*See*

Op. Br. 23-24.) Insofar as taxpayers would have Section 706 refer to

remedies, however, Section 706(2) would be inapposite in those

contexts. Unsurprisingly, taxpayers fail to identify any case in which

vacatur has been ordered in an action for habeas corpus, a petition for enforcement, or a refund suit.

## B. Even if the APA authorized universal vacatur, that remedy would be a discretionary one subject to equitable balancing

At pp. 40-41 of our opening brief, we explained that, even if vacatur were an available remedy under the APA, it would be an equitable remedy. Taxpayers make no effort to defend the District Court's contrary characterization of vacatur as a legal remedy. They nonetheless fail to meaningfully grapple with the necessary corollary, namely that vacatur is subject to traditional equitable principles.

1. At the outset, a court always has the authority to withhold a remedy available at equity, and the text of Section 702 explicitly preserves that authority with respect to the APA. (*See* Op. Br. 42); 5 U.S.C. § 702(1) (nothing in the APA displaces "the power or duty of the court to ... deny relief on any ... equitable ground"). And part of the determination of whether to grant or withhold such a remedy, in whole or part, is assessing the extent to which the remedy is necessary to redress the plaintiff's injury. *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("injunctive relief should be no more burdensome ... than

necessary to provide complete relief to the plaintiffs"). Accordingly,
courts of appeals "should not hesitate to hold that broader relief is an
abuse of discretion" where "party-specific relief can adequately protect
the plaintiff's interests." *Texas*, 143 S. Ct. at 1986 (Gorsuch, J.,
concurring).

Taxpayers make no attempt to show why vacatur was necessary to
vindicate their rights or protect them from harm on a going-forward
basis. Nor could they: taxpayers are fully protected by the *res judicata*
effects of their favorable judgment, the refund of the penalties properly
put at issue, and the abatement of the remaining penalties (as well as
the precedential effect of this Court's prior decision). In awarding a
remedy that provides no effective relief to taxpayers, the District Court
erred.

2. Even if it were somehow appropriate to issue a "vacatur" that
did nothing to redress taxpayers' injury, there would have been no
impediment to limiting that vacatur to taxpayers here, consistent with
traditional notions of equity. Taxpayers suggest that vacatur is
inherently an all-or-nothing remedy. (Br. 16-17, 23-24.) But in other
circumstances, courts recognize that the scope of a vacatur is subject to

equitable considerations.  For example, the general practice is to vacate a district court judgment only as to the party or parties that appeal, not as to non-appealing parties, though that rule is subject to relaxation based on equitable considerations.  S*ee, e.g., In re Taylor*, 655 F.3d 274, 287 (3d Cir. 2011) ("Ordinarily, of course, a party which does not appeal a decision by a district court cannot receive relief with respect to that decision."); *Tompkins v. Cyr*, 202 F.3d 770, 786-87 (5th Cir. 2000) (vacating erroneous damages calculation only as to "the losing defendants who have appealed" and declining to "vacate the damage award against the non-appealing defendants"); *United States v. Lumbermens Mut. Cas. Co.*, 917 F.2d 654, 662 (1st Cir. 1990) (declining to modify judgment in favor of a non-appealing party where "the interests of justice in this particular case" did not support reversal); Wright & Miller, Special Limits on Jurisdiction—Separate Appeal Requirements, 15A *Fed. Prac. & Proc.* § 3904 (3d ed. April 2023 Update) (describing the question as whether "exceptional circumstances" justify relaxing the ordinary rule).

Consistent with this understanding of vacatur, other courts have exercised greater remedial restraint than the District Court did here.

-21-

*E.g.*, *Virginia Soc'y for Human Life, Inc. v. Fed. Election Comm'n*, 263 F.3d 379, 394 (4th Cir. 2001) (limiting relief to the parties), *overruled on other grounds by The Real Truth About Abortion, Inc. v. FEC*, 681 F.3d 544 (4th Cir. 2012); *GBX Assocs. v. United States*, 2022 WL 16923886, at \*15-\*18 (N.D. Ohio Nov. 14, 2022) (same); *Skyworks, Ltd. v. Ctrs. for Disease Control & Prevention*, 542 F. Supp. 3d 719, 736 (N.D. Ohio 2021) (same); *see also Biggs v. Quicken Loans, Inc.*, 990 F. Supp. 2d 780, 784-85 (E.D. Mich. 2014).  Plaintiffs fail to acknowledge or address this authority.

3.  Unable to articulate any theory under which the District Court's broad relief was necessary to protect them from harm, taxpayers turn to a series of policy arguments.  None is persuasive.

First, taxpayers assert that a "court cannot conclude that an agency action is unlawful only as to certain parties or in certain geographic regions."  (Br. 29.)  But this assertion confuses a court's reasoning with its remedial power.  For example, just because a court's reasoning may have broad application does not mean that the court automatically enters a nationwide injunction.  And courts may, of course, reach different conclusions about whether agency action is in

-22-

fact "unlawful."  That is a feature of geographically dispersed courts,

and the Supreme Court has specifically recognized the value of allowing

"several courts of appeals to explore a difficult question," even—and

especially—if those courts disagree.  *United States v. Mendoza*, 464 U.S.

154, 160 (1984).

Principles of judicial comity likewise support respecting the ability

of multiple courts to adjudicate questions.  *See, e.g.*, *United States v.

AMC Entm't, Inc.*, 549 F.3d 760, 770-72 (9th Cir. 2008).  And agencies

are generally permitted to engage in intercircuit nonacquiescence,

applying the decision of a court of appeals within that circuit while

applying their ordinary rules elsewhere.  (*See* Op. Br. 19-20.)  Indeed,

the arguments taxpayers advance underscore why universal vacaturs

are fundamentally no different from nationwide injunctions in their

distorting effects.  *See Texas*, 143 S. Ct. at 1981 (Gorsuch, J.,

concurring) (describing universal vacatur as a "variation on the theme"

of nationwide injunctions).

Second, taxpayers contend that, in practice, courts may not

adjudicate further challenges to Notice 2007-83 based on statute of

limitations issues.  (Br. 30-34.)  This argument is hard to parse; if other

plaintiffs have failed to timely bring their claims, it is difficult to understand why they should receive relief simply because some other, wholly unrelated plaintiff across the country succeeded on a claim that was not time-barred.

In fact, taxpayers appear to believe that if the Government were to actually prevail in a suit against another taxpayer—whether for threshold reasons or on the merits—the Government would still be precluded from enforcing whatever agency action was at issue against that taxpayer if another taxpayer secured a vacatur elsewhere. But the APA does not require agencies to secure a "straight sweep" of 94 judicial districts and 12 courts of appeals. *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 601 (2020) (Gorsuch, J., concurring). Regardless, there is no dispute that the general rule favoring vacatur pressed by taxpayers would threaten to cut off consideration of the issue by other courts in numerous cases. *See, e.g.*, *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring) (observing that a district judge had "assumed authority for the issue [in that case] across the nation," such that "one decision against the government by one judge potentially freezes the debate for all lower court judges").

-24-

Third, taxpayers urge that federal tax law demands a unique and exceptional degree of uniformity, such that it would be "inconceivable" to allow courts to reach different conclusions regarding the validity of IRS and Treasury Department rules.  (Br. 34-35.)  Taxpayers ignore the fact that this Court and others routinely do just that, as we illustrated on pp. 34-35 of our opening brief.  *Compare Oakbrook Land Holdings, LLC v. Commissioner*, 28 F.4th 700, 710-22 (6th Cir. 2022) *with Hewitt v. Commissioner*, 21 F.4th 1336, 1342-53 (11th Cir. 2021).  Nor is there any evidence to support taxpayers' rank speculation (Br. 40-42) that, absent nationwide relief, a wave of taxpayers will relocate their residences and principal places of business to obtain a more favorable forum in which to pursue their tax refund suits.

# CONCLUSION

The District Court's order vacating Notice 2007-83 nationwide is

erroneous and should be reversed.

Respectfully submitted,

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

/s/ Geoffrey J. Klimas

FRANCESCA UGOLINI              (202) 514-3361
ELLEN PAGE DELSOLE             (202) 514-8128
GEOFFREY J. KLIMAS             (202) 307-6346
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel:*
DAWN N. ISON
  *United States Attorney*

AUGUST 31, 2023

15256052.1

# CERTIFICATE OF COMPLIANCE

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

[X]   this document contains <u>4,589</u> words, **or**

[ ]   this brief uses a monospaced typeface and contains _____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X]   this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

[ ]   this brief has been prepared in a monospaced typeface using _____ with _____.

(s)   <u>/s/ Geoffrey J. Klimas</u>

Attorney for  <u>United States of America</u>

Dated: <u>      August 31, 2023      </u>

15256052.1

# RECORD ADDENDUM

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

### Pursuant to Sixth Circuit Rule 30(g)

| Record Entry No. | Description | Page ID Range |
|---|---|---|
| 22 | Order Granting in Part and Denying in Part Defendant's Motion to Dismiss | 230-265 |
| 45 | Opinion and Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiffs' Cross-Motion | 591-616 |
| 60 | Defendant's Response to Plaintiffs' Motion to Enforce Mandate Ex. A | 847-850 |